IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER LYNN HUMMEL, SHAWN DAVID HUMMEL, SR,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant, | 2:23-CV-02002-CCW |

**OPINION**

Before the Court is a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint filed by Defendant Wells Fargo Bank, N.A. ECF No. 24. For the reasons set forth below, the Court will grant the Motion.[1]

**I.    Factual Background**

The relevant factual allegations, taken as true, are as follows.

On May 1, 2014, Plaintiffs Jennifer Lynn Hummel and Shawn David Hummel, Sr. purchased a 2012 Ford Explorer, and Defendant Wells Fargo Bank, N.A. became the secured party for the Hummels' auto loan account. ECF No. 22 ¶¶ 39, 40. At some point in 2015, the Hummels defaulted on their auto loan payments, and Wells Fargo repossessed their Ford Explorer. *Id.* ¶ 41. At a later unspecified point in time, the Hummels cured the default, reinstated their loan, and regained possession of their vehicle. *Id.*

On November 19, 2021, Wells Fargo sent a notice (the "2021 Error Notice") to the Hummels indicating that it had accidently processed a payment using an incorrect date, and then

---

[1] The Court has jurisdiction over this case under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

based on this date, improperly charged a late fee to their account. *Id.* ¶ 43. In this Notice, Wells Fargo also enclosed a check in the amount of $108.04 for "late fees that should not have been assessed." *Id.* ¶¶ 47, 48. On November 7, 2023, Wells Fargo sent a second error notice (the "2023 Error Notice"), indicating that it had improperly charged late fees to the Hummels' account which "may have contributed to actions taken to repossess the[ir] vehicle." *Id.* ¶¶ 59, 61. The 2023 Error Notice included a check in the amount of $4,778.79 "for any interest and/or other fees that should not have been assessed." *Id.* ¶ 60. On March 14, 2024, after the Hummels commenced the instant case, Wells Fargo sent a third error notice (the "2024 Error Notice"). *Id.* ¶ 65. This Notice indicated that Wells Fargo had "inadvertently released its lien on the vehicle . . . on or about 05/23/2022" but had continued to accept payments upon this allegedly secured claim. *Id.* ¶ 66. In the 2024 Error Notice, Wells Fargo enclosed a check for $2,439.62 which represented the Hummels' "payments that were made since the release of [their] lien." *Id.* ¶ 67.

      Amid receiving these error notices, the Hummels learned of a separate class action lawsuit against Wells Fargo in the Eastern District of Pennsylvania arising from Wells Fargo's repossession of vehicles in Pennsylvania. *See Sorace, et al. v. Wells Fargo Bank, N.A.*, Case No. 2:20-cv-04318-GJP (E.D. Pa.) (hereinafter, "*Sorace* Litigation"). On June 23, 2023, the Hummels attempted to intervene in the *Sorace* Litigation to prevent their claims "from being quietly swept away." *Id.* ¶¶ 1, 6. On September 11, 2023, the *Sorace* court denied the Hummels' Motion to Intervene, finding that while they "have sufficient interest as members of the class . . . Any substantive challenges can be addressed as objections to the settlement." *Id.* ¶ 7. The Hummels were then given a choice: they could opt out of the class or they could remain in the class and file objections, if any, to the settlement. The Hummels chose to remain in the class, and they objected to the proposed class settlement agreement. *Id.* ¶ 10. On February 15, 2024, the *Sorace* court

2

overruled their objections and granted final approval to the proposed settlement agreement (hereinafter, "*Sorace* Settlement Agreement."). *Id.*

The *Sorace* Settlement Agreement includes a release, barring all class members "from instituting or further prosecuting, in any forum whatsoever . . . each and every Released Claim." ECF No. 25, Ex. 7 at 47 (hereinafter, "*Sorace* Release"). Released claims are defined as "any and all claims . . . for any relief whatsoever . . . that in any way concern, arise out of, or relate to . . . the charging, payment, collection, and attempted collection of amounts relating to any Account." *Id.* at 15. Account is defined as "each Settlement Class Member's auto loan account(s) owned by Wells Fargo Auto related to the financing of his/her/their vehicle(s), which were subsequently repossessed and which are the subject of this Action." *Id.* at 10. On March 15, 2024, the Hummels appealed the approval of the *Sorace* Settlement Agreement to the Third Circuit, raising a number of challenges including an objection to the Release clause. ECF No. 22 ¶ 11.

On April 9, 2024, the Hummels filed a First Amended Class Action Complaint[2] against Wells Fargo in this Court, alleging that the Error Notices they received violate Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1, *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, *et seq*. ECF No. 22. Wells Fargo now seeks to dismiss the Hummels' claims in their entirety. ECF No. 24. The Motion to Dismiss is fully briefed and ripe for resolution. ECF Nos. 24, 25, 28, 31.

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty.*

---

[2] The Hummels filed their original class action complaint on November 17, 2023. ECF No. 1.

*of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

**III.    Legal Analysis**

In its Motion, Wells Fargo asserts that the *Sorace* Release bars the Hummels from pursuing their claims before this Court. ECF No. 25 at 10–13. In response, the Hummels contend that the *Sorace* Release does not bar their claims because it violates the requirements of due process and because their claims before this Court and those in the *Sorace* Litigation do not involve "the same nucleus of operative fact." ECF No. 29 at 5–11. The Court agrees with Wells Fargo that the *Sorace* Release bars the Hummels from pursuing their claims in this case.[3]

**A.    The Release in the *Sorace* Settlement Agreement Bars the Hummels' Claims.**

Wells Fargo asserts that the language of the *Sorace* Release covers the Hummels' claims in this case because these claims—as well as those in the *Sorace* Litigation—stem from a Wells Fargo auto loan account for a repossessed vehicle. ECF Nos. 25 at 10–13; 31 at 1–4. The Hummels counter that the Release does not encompass their claims here because these claims relate to error notices and improperly charged late fees, while the claims in the *Sorace* Litigation involve allegedly deficient disclosure notices and misconduct that occurred when Wells Fargo repossessed certain vehicles. ECF No. 29 at 9–11.

Under the doctrine of res judicata, "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action… even though the precluded claim was not presented, and could not have been presented, in the class action itself." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 366 (3d Cir. 2001). "The key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x

---

[3] Wells Fargo also argues that the Hummels have failed to state a claim under the FCEUA and UTPCPL. ECF No. 25 at 13–20. But because the Court finds that the *Sorace* Release bars the Hummels' claims, *see* Part III.A, it need not address Wells Fargo's additional argument that the Hummels have failed to state a claim.

5

577, 579–80 (3d Cir. 2011) (finding that a release clause barred plaintiff's breach of contract claim challenging Defendant's calculation of charges because that claim involved a transaction on a policy that was covered by the release). The Third Circuit "has not adopted a strict interpretation of the 'identical factual predicate' doctrine." *Scott v. Bimbo Bakeries USA, Inc.*, No. 10-3154, 2015 WL 8764491, at *4 (E.D. Pa. Dec. 15, 2015) (citing *Freeman*, 445 F. App'x at 579).

Here, the Court finds that res judicata bars the Hummels from pursuing their claims in this case. First, a judicially approved settlement serves as a final judgment on the merits, *Toscano v. Conn. Fen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008), and the *Sorace* settlement was judicially approved, *see generally Sorace v. Wells Fargo Bank, N.A.*, No. 20-4318, 2024 WL 643229 (E.D. Pa. Feb. 15, 2024). Second, both the Hummels and Wells Fargo were parties to the *Sorace* settlement and are bound by its terms. ECF No. 22 ¶¶ 1, 2, 10 (acknowledging that the Hummels were class member who did not opt out). Finally, the terms of the *Sorace* Settlement Agreement preclude the Hummels from pursuing this action because their claims in this case "rest[] on the same factual predicate as the [*Sorace* Litigation claims]." *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, No. 20-4660, 2023 WL 7285167, at *5 (E.D. Pa. Nov. 3, 2023). The Hummels' claims of deceptive debt collection practices arise from the same Wells Fargo automobile accounts covered by the *Sorace* Release. *See Sorace*, 2024 WL 643229, at *9 (noting that the *Sorace* Litigation and the instant action involve the same Wells Fargo accounts and the same alleged conduct).

The *Sorace* Release bars all class members—including the Hummels—"from instituting or further prosecuting, in any forum whatsoever . . . each and every Released Claim." ECF No. 25, Ex. 7 at 47. Released claims are defined as "any and all claims . . . for any relief whatsoever . . . that in any way concern, arise out of, or relate to . . . the charging, payment, collection, and

attempted collection of amounts relating to any Account." ECF No. 22 at 15.  Account is defined as "each Settlement Class Member's auto loan account(s) owned by Wells Fargo Auto related to the financing of his/her/their vehicle(s), which were subsequently repossessed and which are the subject of this Action." *Id.* at 10.  Here, the Hummels' claims are covered by the *Sorace* Release because they are claims for relief that "relate to" "the charging, payment, collection, and attempted collection of amounts relating to" an auto loan account owned by Wells Fargo for a vehicle that was repossessed.

If the Hummels wanted to pursue these claims, they could have opted out of the *Sorace* settlement and its Release—but they chose not to.  By remaining in the class, the Hummels are bound by the *Sorace* Settlement Agreement and its Release.  And such Release covers the Hummels' claims in this case and bars them from pursuing such claims.  *See Sorace*, 2024 WL 643229, at *10 ("[The Hummels] may either remain in [this] class or opt out and do their own thing, not both.").  Accordingly, the *Sorace* Release bars the Hummels from bringing their claims in this case.

      **B.**    **Enforcing the *Sorace* Release Will Not Violate Due Process.**

The Hummels further assert that even if the *Sorace* Release covers their claims in this case, it should not be enforced because doing so would violate due process as the Release is too broad and would extinguish many putative class members' claims. ECF No. 29 at 6–9.  They also contend that the *Sorace* court violated their due process rights when it denied them the right to intervene and overruled their objections to the settlement. *Id.*

For a class settlement agreement to bind class members under the principles of res judicata, they must have been afforded certain due process protections. *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 99 (3d Cir. 2013).  "In a class action settlement where opt-out rights

are given, due process requires: (1) adequate representation by the class representatives, (2) notice of the class proceedings, and (3) the opportunity to be heard and to participate in the class proceedings." *Id.* Additionally, "[t]here must be a process by which an individual class member or group of class members can challenge whether these due process protections were afforded to them." *In re Diet Drugs Prods. Liability Litig.*, 431 F.3d 141, 145 (3d Cir. 2005). Such a challenge "can take the form of an appeal of the class certification itself, a collateral attack on an already-certified class, or a Rule 60(b) motion." *Id.* But a challenge to "the terms of [the] settlement agreement, itself . . . is clearly inappropriate as it is not a component of a due process challenge, appropriate for collateral attack." *Gotthelf*, 525 F. App'x at 102.

The Hummels have challenged the *Sorace* Settlement Agreement in two ways: through an appeal to the Third Circuit and a collateral attack before this Court. In the case before this Court, the Hummels do not contend that the class representatives inadequately represented the class or that they received inadequate notice. *See generally* ECF No. 29. They do, however, appear to assert that they did not have an opportunity to be heard and to participate in the class proceedings because the *Sorace* court denied their motion to intervene and overruled their objections to the settlement. *Id.* Despite the Hummels' assertions, the Court finds that they participated as class members and had a meaningful opportunity to be heard. First, the Hummels had a choice to either file objections to the Settlement Agreement—which they did—or to opt out of the settlement. *Sorace*, 2024 WL 643229, at *9 ("'[A]ny substantive challenges' the Hummels have 'can be addressed as objections to the settlement,' or they are 'free to opt out of the class settlement.'"). Further, at the Final Fairness Hearing, the Hummels' attorney explained their objections to the settlement and argued against final approval. *See id.* The *Sorace* Court considered their objections but ultimately overruled them. *Id.* at 9–11. Such circumstances do not implicate a due process

8

violation. *Gotthelf*, 525 F. App'x at 100 (finding no due process violation where plaintiff was apprised of the settlement terms, decided not to opt-out, exercised his right to object, and the court considered his specific objections prior to approving the settlement agreement).

The Hummels also argue that enforcing the *Sorace* Release would violate due process because the language is too broad and far-reaching. Such an objection, however, speaks to the terms of the settlement agreement itself—not to the requirements of due process—and is not appropriate for collateral attack. *Gotthelf*, 525 F. App'x at 102 ("[A] challenge to "the terms of [the] settlement agreement, itself . . . is clearly inappropriate as it is not a component of a due process challenge, appropriate for collateral attack."). But even if such an attack were appropriate, courts routinely approve broad releases such as the one at issue here. *Sorace*, 2024 WL 643229, at *9 ("[I]t is 'not unusual for a class settlement to release all claims arising out of a transaction or occurrence' including unknown claims.") (citing *Halley v. Honeywell, Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017); *Drennen v. Cmty. Bank of N. Va.*, No. 05-1386, 2009 WL 440960, at *2 (W.D. Pa. Feb. 23, 2009) (Lancaster, J.) (enforcing an "undeniably broad" release clause because the "court of appeals has repeatedly held that similarly broad releases are enforceable."); *In re Prudential*, 261 F.3d at 366–67 (enforcing a release "intended to be very broad" because it prohibited the "institut[ing], maintain[ing] or assert[ing]" of any claims "based on," "connected with," "arising out of," "or related to, in whole or in part" two insurance policies); *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 578–79 (3d Cir. 2011) (enforcing broad release clause despite it being "difficult to imagine a more comprehensive release."). Although the *Sorace* Release is broad—covering "unknown" and "distinct" claims—such a clause is permissible and does not violate due process.

Accordingly, the Court finds that the *Sorace* Release is enforceable and bars the Hummels from pursuing their claims in this case. Therefore, the Court will grant Wells Fargo's Motion, and dismiss the Hummels' claims. Further, because amendment would be futile, the claims will be dismissed with prejudice. *See Drennen* 2009 WL 440960, at *2 (finding that amendment would be futile because "by failing to opt out, plaintiffs have released the claims they assert in this case.").

### IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED such that the Hummels' Complaint is DISMISSED WITH PREJUDICE, as further set forth in the accompanying Order.

DATED this 5th day of November, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record